## HARH HAK SAE v. PAK SUNG KWON, KIM SUNG KWON AND YEE NAI SOO.

EXCEPTIONS FROM CIRCUIT COURT, FIRST CIRCUIT.

ARGUED JANUARY 21, 1908.     DECIDED FEBRUARY 3, 1908.

HARTWELL, C.J., WILDER AND BALLOU, JJ.

NEW TRIAL—*surprise.*

> The correctness of the translation of a Korean note, as to
> whether the defendant was a maker or a witness, having been in
> controversy at the trial at which plaintiff recovered, a new trial
> on the ground of surprise cannot be granted upon an affidavit that
> the translation was incorrect. The affidavits held insufficient in
> view of the issues raised and litigated at the trial.

### OPINION OF THE COURT BY HARTWELL, C.J.

The plaintiff brought an action to recover the sum of $540, claiming the same to be the balance due him from the defendants upon their written promise and agreement dated December 10, 1906, translated "Note. Six Hundred Dollars Gold. Promise to pay next February tenth, 1907," the same being in Korean characters and annexed with the translation to the complaint. The complaint avers that on February 10, 1907, at Honolulu, the defendants became indebted to the plaintiff in the said sum of $600 for money payable by them to him for money lent and advanced by him to them at their request and which they by the said agreement undertook and promised to repay to him, but had neglected to do so until the date of the complaint when the defendant Kim Sung Kwon, through his trustees in bankruptcy, became liable to pay and would pay the plaintiff the sum of $60 as a dividend from the assets of the bankrupt's estate, which sum the plaintiff is willing to allow claiming the balance of $540. The complaint further avers that the defendants on February 10, 1907, "under and by virtue of

the contract, promise and agreement in writing heretofore set out," were indebted to the plaintiff in the sum of $540 for money payable by the defendants to the plaintiff for money received by them for his use which the defendants jointly and severally under and by virtue of said written agreement undertook, promised and agreed to repay to him but had failed and neglected so to do, and finally that the plaintiff claims of the defendants the sum of $540 and interest at six per cent. on $600 from December 10, 1906, to June 15, 1907, and thereafter upon $540 remaining due and unpaid and costs.

No service of summons was made upon any of the defendants except Yee Nai Soo who filed an answer denying the truth of the facts set out in the plaintiff's complaint and averring, as shown by his affidavit, that he had a good defense to the action on the merits.

The court, jury being waived, heard the cause September 18, 1907, and from the evidence introduced by the parties decided the cause upon the same day, finding for the plaintiff to recover of the defendant Yee Nai Soo the sum of $540 with interest from December 10, 1906, on $600 until June 15, 1907, and on $540 from June 15 to September· 18, 1907, amounting to $26.60, and ordered judgment therefor and for costs, which was entered immediately. The following day a writ of execution upon the judgment was issued and levy made by the high sheriff upon the personal property of the defendant Yee Nai Soo. September 24 that defendant, by another attorney than the one who had appeared for him previously in the case, filed motions to vacate the judgment and "reopen the case," and for a new trial upon the grounds that the judgment was "contrary to the law and evidence and weight of the evidence;" that he was taken by surprise by the plaintiff's testimony that he lent the money to him or that the money was paid over to him, claiming that the truth was that the plaintiff asked him as a favor to go to the bank with him to give him $500 to take to the defendant Pak Sung Kwon, as he says that Pak Sung Kwon

and the other defendant, Kim Sung Kwon, would testify; that
he was further surprised by the plaintiff's testimony that he
wrote the note, the truth being that Kim Sung Kwon wrote it
and Pak Sung Kwon put his mark on the note near his name
and that Kim Sung Kwon signed his own and the defendants'
names as witnesses; that he himself never signed the note and
that the other two defendants would so testify but they were not
present at the trial because when this defendant asked his
attorney, Lyle A. Dickey, whether they would be required as
witnesses he replied that "it was plain that the plaintiff could
not recover against this defendant and that they would not be
required;" that the defendant understands but little English
and at the trial felt that his testimony was not translated cor-
rectly but did not know how to correct the matter and is now
informed by his attorney Magoon, who has heard read the sten-
ographer's notes of his testimony, that he made contradictory
and confused statements, as translated by T. S. Choy who trans-
lated in said cause, the truth being that if his statements had
been correctly translated they would be clear and uncontra-
dictory to the effect that he did not write or sign the note; that
he was not permitted to explain his testimony at the trial; that
while testifying he produced a book in which he had jotted
down some false statements of the plaintiff with the intention
of replying to them and denying them before the court; that
the interpreter, when asked what this defendant was doing, said
that he was reading the plaintiff's statement in the case, where-
upon this defendant was not allowed to explain.

The defendant's name is signed to the motions which were
signed and sworn to by him in the English language, the jurat
being also in the English language, and was accompanied by
the affidavit of one C. H. Min to the effect that he is a native
Korean; that he had examined the note on file and made two
translations thereof, which were annexed, one of them being
the English equivalent of each Korean character written in the
original and the other being a liberal translation giving its true

meaning; that the names Pak Sung Kwon, Kim Sung Kwon and Yee Nai Soo appeared to be signed in the same handwriting; that "Pak Sung Kwon is the maker in said note and that Kim Sung Kwon and Yee Nai Soo are witnesses and are not promisors in said note with Pak Sung Kwon." The "liberal translation" is as follows:

"December 10, 1906.

"On the tenth day of February, 1907, I promise to pay Harh Hak Sai Six Hundred Dollars with interest at the rate of three per cent. per month, and in case of nonpayment at the date of maturity, the rate of interest shall therefore be doubled.

"(Sgd) Pak Sung Kwon.

"Witnesses

"(Sgd) Kim Sung Kwon
"   "    Yee Nai Soo."

The defendant filed with this motion his bond in the sum of $625 conditioned to pay all costs further to accrue in case he should be defeated and that he would not to the detriment of the plaintiff in the action remove or otherwise dispose of any property he may have liable to execution. October 4 the judge heard the motions and granted a new trial, to which ruling the plaintiff excepted on the ground that the defendant had taken no exceptions at the trial, that the judge exceeded his jurisdiction in hearing the motion and granting the new trial and that the motion showed no grounds for a new trial. October 10 the plaintiff filed a motion that the defendant be required to file a bond conditioned for payment of the amount for which the execution was issued in case the judgment should not be reversed on appeal, evidently referring to the proviso in Sec. 1875 R. L. as amended by Act 83 S. L. 1907, and excepted to the refusal of the motion. The case comes up on these two exceptions.

The transcript shows that the Korean interpreter at the trial, who translated the paper referred to in the complaint, testified that the word "witness," appearing in the paper, was not before

the name "Yee Nai Soo" but before the name of Kim Sung Kwon. The plaintiff testified that at the request of Yee Nai Soo he gave him $600 in two sums of $100, paid at the defendant's hotel, and $500, at the Yokohama specie bank on King street where he drew all the money; that the other two defendants were in the hotel business with Yee Nai Soo and were present at the bank when he gave Yee Nai Soo the $500, and that Yee Nai Soo did not sign the paper as a witness but as principal. A Korean witness, H. K. Chung, testified that the paper contained the name "You Nae Sui, Manager Hotel," with the manager's stamp; that "If Koreans have any accounts with other people then they put their stamp on the paper to pay them," but that witnesses did not do so. The defendant Yee Nai Soo testified: "This company (what one is not stated) gave $600 to Pak Sung Kwon;" that as he did not know how to write the witness wrote the paper and Kim Sung Kwon wrote the name; that the plaintiff told the witness to sign as witness for the note, plaintiff having given the money to Pak Sung Kwon; that he was at the bank when plaintiff gave $500 to Pak Sung Kwon but that he himself never got any of the money; that Kim Sung Kwon had been a partner with him but was not so at the time of this transaction nor was Pak Sung Kwon a partner with him; that the plaintiff had never asked the witness for the money; that Kim Sung Kwon wrote his name upon the paper as a witness and put the stamp of the witness' hotel upon it. In cross-examination he corrected this testimony and said that Kim Sung Kwon was a partner with him and, in reply to a question of the court, reaffirmed the statement, saying that the $500 was paid to him by the plaintiff who told him to give it, and that he gave it, to Pak Sung Kwon. The court, in giving judgment for the plaintiff, expressed the opinion that he had "told a fair, straightforward story" as compared "with this last witness."

The finding of a court when jury is waived stands upon the same footing with the verdict of a jury and may be set aside or

not for the same reasons. There is this important difference that when the judge who tried the cause passes upon a motion to set aside his own finding he can more clearly than in the case of a verdict determine the effect which the additional facts sought to be presented would be likely to have in his own mind if he were to retry the case. The judge may have felt in this case that upon the showing made injustice had been done and that it was right that he should give the defendant a chance to prove that he had been wronged by incorrect translation of the note and inaccurate interpretation of evidence. The same rules, however, are required to be applied to granting new trials in jury waived cases as in cases in which jury is not waived. A new trial could not be granted in this case on any of the grounds named in the motion. There was no error in law, no exception was taken to any ruling at the trial and the finding was amply sustained by evidence. The evidence caused no surprise to the defendant whose attorney thoroughly cross examined the plaintiff's witnesses and presented the defendant's own testimony upon the disputed question whether he had made or merely witnessed the note. There was no newly discovered evidence.

This court is not at liberty, in the absence of a statement to that effect by the judge, to infer that the new trial was ordered upon other grounds than those upon which it was asked. We do not, for instance, know whether the affidavits led him to doubt the competency or integrity of the court interpreter or the truth of the plaintiff's testimony that the defendant made the note as principal or that the plaintiff had loaned this defendant the money. If this court is called upon to sustain a trial judge in the exercise of discretionary power in granting a new trial it is proper that the grounds on which the discretion was based should be specifically stated. A losing party is usually able to offer cumulative evidence and this alone would not ordinarily justify setting aside a verdict ordering a new trial. The correctness of the translations may often be called

into question after the trial and if this alone is sufficient there would be great uncertainty in jury trials. The case presented · by the affidavit of Min Hing turns upon the question whether the defendant signed the written promise as a principal or witness. The other persons named as defendants, whose names appear on the note, were not produced as witnesses and if, as claimed by this defendant, one of them was in fact the maker of the note and the other defendant and himself were merely witnesses, the affidavit of at least one of the other defendants might and ought to have been filed in support of such claim. In the absence of such showing it may properly be inferred that it could not be made so that the defendant was asking a new trial merely upon his own affidavit supported by that of another Korean. There is no suggestion, except by the affidavits, of the incompetency or unfairness of the court interpreter nor is there any contradiction of the testimony to the effect that a seal or stamp placed upon the instrument in accordance with Korean custom indicated who was the responsible maker.

Another material circumstance in this case is that no attempt is made to show by the defendant's attorney at the trial, Mr. Dickey, that it was true that he had told the defendant that the evidence of the other defendants would not be required. His cross examination of the plaintiff's testimony shows that he had been instructed upon the defendant's claim that he did not sign the note as maker, and it is not to be assumed, without an opportunity given him to explain the matter, that such an experienced attorney as Mr. Dickey would deliberately have refused the defendant's request to call the other defendants to testify upon this important matter provided they would testify in favor of the defendant's claim.

To set aside a verdict upon an offer of evidence relating to a material fact in issue upon each side of which testimony was given at the trial would lead to entire uncertainty in the results of trials of actions at law unless the practice is strictly limited to cases in which it is shown satisfactorily that there has been a

miscarriage of justice from no fault of the party or of his attorney. In the absence of such a showing the order to grant a new trial cannot be sustained.

Moreover, the plaintiff relies, and we think that his pleading allows him to do this, upon counts for money received to his use, and for money lent. It is true that the averments to sustain these counts are coupled with averment of the written promise but this may be treated as surplusage. In this view the evidence concerning the note was immaterial, the fact essential to recovery being the alleged loan. It is obvious that a new trial could not be granted merely upon an offer of further evidence on the disputed question as to the loan.

Whether exceptions lie to an order granting a new trial in a case shown to be within the jurisdiction of the trial court is a question which was not raised in argument and which, in the view we have taken in this case, we do not pass upon. *Heleluhe v. Rapid Transit Co.,* 18 Haw. 484.

Exceptions sustained, order granting new trial and vacating judgment reversed.

*G. A. Davis* for plaintiff.

*J. A. Magoon* for defendant Yee Nai Soo.